J-S71005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| ERIC MARCED | | |
| Appellant | | No. 1592 EDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0011226-2011

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 16, 2018**

Appellant, Eric Marced, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions for several firearms offenses and drug possession. On appeal, he raises a single claim of suppression court error. We affirm.

The relevant facts and procedural history of this case are as follows. Two police officers were driving an unmarked police car while on patrol in a high crime area of North Philadelphia. One of the officers was dressed in uniform; the other was a plainclothes detective. The officers saw Appellant standing with a group of men beneath a street light. They observed Appellant rolling what appeared to be a marijuana cigarette. Both officers exited the vehicle, identified themselves as police officers, and told the group of men not to

_____
*   Retired Senior Judge assigned to the Superior Court.

move. Appellant fled, shouting, "I'm not going to jail." N.T. Suppression Hearing, 3/21/16, at 10-11.

As he ran, Appellant reached into one of the pockets of his cargo shorts. Several times during the chase, Appellant briefly stopped and attempted to strike the officers pursuing him, before he resumed flight. Eventually, one of the officers tackled Appellant. Appellant began violently digging in the pocket of his shorts. One of the officers saw a beam of light shining through the pocket, which he recognized as the laser sight of a gun. The officers subdued Appellant, searched him, and found a firearm. They also found marijuana, cocaine, phencyclidine (PCP), and $505.00 in cash.

Appellant was arrested and charged with possession of a firearm by a person prohibited, carrying a firearm without a license, carrying firearms on a public street in Philadelphia, resisting arrest, and possession of a controlled substance. Appellant filed a motion to suppress the physical evidence taken from him during the search of his person. The court denied the motion, and Appellant proceeded to a bench trial. The court found Appellant guilty of all counts, and imposed a sentence of five to ten years' incarceration. This appeal is now before us.

On appeal, Appellant contests the court's denial of his suppression motion. Appellant argues the police lacked reasonable suspicion that he engaged in criminal activity. Appellant maintains the police could not have observed whether he was rolling a marijuana cigarette or a lawful tobacco cigarette, and that this justification was a false pretext for stopping him.

Appellant asserts the trial court erred in failing to suppress the evidence gathered from the subsequent pat down and arrest following this initial illegal stop. We disagree.

When reviewing a denial of a suppression motion, "we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Eichinger**, 915 A.2d 1122, 1134 (Pa. 2007). We are not bound by the suppression court's legal conclusions and review the suppression court's application of the law to the facts *de novo*. **See Commonwealth v. Myers**, 118 A.3d 1122, 1125 (Pa. Super. 2015).

In contrast, we are bound by the suppression court's findings of fact when they are supported by the record. **See Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa. Super. 2015). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted).

The record supports the suppression court's factual findings. Therefore, we proceed to examine the court's application of the relevant law to the facts at hand.

There are three levels of interaction between citizens and police officers: (1) a mere encounter, (2) an investigative detention, and (3) a custodial

detention. **See Commonwealth v. Fuller**, 940 A.2d 476, 478 (Pa. Super. 2007). An investigatory detention, otherwise known as a **Terry**[1] stop, permits an officer to briefly detain "an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct." **Commonwealth v. Raglin**, ___ A.3d ___, ___, 2018 WL 505575, *3 (Pa. Super., filed January 23, 2018) (citation omitted). Mere presence in a high crime area is insufficient to support a finding of reasonable suspicion; however, a court may consider that fact in assessing the totality of the circumstances. **See In re D.M.**, 781 A.2d 1161, 1163-64 (Pa. 2001).

If at any point during this investigatory detention, an "officer believes, based on specific and articulable facts, that the individual is armed and dangerous" the officer may perform a **Terry** frisk. **Commonwealth v. Stevenson**, 894 A.2d 759, 772 (Pa. Super. 2006) (citation omitted). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." **Commonwealth v. Simmons**, 17 A.3d 399, 403 (Pa. Super. 2011) (citations omitted). "The fundamental inquiry" in reviewing the officer's decision "is an objective one," utilizing "a totality of the circumstances test." **Commonwealth v. Griffin**, 954 A.2d 648, 651 (Pa. Super. 2008) (citations omitted).

One officer testified at the suppression hearing. The suppression court

---

[1] **Terry v. Ohio**, 392 U.S. 1 (1968).

found his testimony credible. And we defer to that credibility determination. *See Elmobdy*, 823 A.2d at 183.

The officer testified he had eighteen years of policing experience, with eight years in the narcotics division. *See* N.T. Suppression Hearing, 3/21/16, at 5. He described where he saw Appellant as a "high-drug, high-crime area." *Id*., at 6. He observed Appellant hand-rolling what the officer believed to be a marijuana cigarette. *See id*., at 7. The officer acknowledged Appellant's hand motions were also consistent with those of a person rolling a tobacco cigarette—but specifically stated he saw Appellant holding a green leafy substance that appeared to be marijuana. *See id*., at 22-23.

At the time the officers approached the group and told the men not to move, they had reason to believe they had just witnessed Appellant in violation of 35 P.S. § 780-113(a)(31) (possession of a small amount of marijuana). The officers therefore decided to briefly detain the group of individuals, in order to ascertain whether Appellant was in fact violating the law.

Before the officers could speak to Appellant, he fled. *See id*., at 10. Appellant attempted to hit the officers several times as he ran; he also screamed he was "not going to jail" and rummaged around in his pocket for an unknown object. *Id*. at 10-12. When the officers finally stopped him, they saw a light beam illuminating his pocket, which they believed to be the laser sight of a gun. *See id*., at 13.

The officer testified he believed Appellant was rolling a marijuana cigarette, in violation of the law. Thus, we find the officers had reasonable suspicion to stop the group of men and further investigate this suspected criminal behavior.

The officers also frisked Appellant for weapons after they were able to stop him. The testifying officer described Appellant's aggressive behavior, Appellant's repeated attempts to reach into his pocket, and the officer's perception that he could see the laser sight from what he believed to be a gun shining through Appellant's pants.

Under the totality of the circumstances, the officers had reason to believe Appellant was armed and dangerous. Thus, the suppression court correctly determined that the officers had a reasonable basis for a protective frisk, and properly denied Appellant's suppression motion. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/18